Daniels, J.
The money in controversy was directed to be, and was, paid to Wellesley W. Gage by the Union Trust Company, for what was found to be owing to him by Anna IC. Gilman, as her proctor, attorney and counsel, and §425 the fees of a referee. The order directing the payment was obtained at the instance of Anna K. Gilman, an executrix of the estate, entitled on its distribution to one-tenth of the amount to be distributed. She applied for an order direct ■ ing her attorney to deliver the papers in his possession, together with a stipulation for the substitution of another person as her attorney in the litigation to which she was a party. He claimed a lien upon the papers for the amount due and owing to him for his services, and on the reference he was found to be entitled to the money paid to him in satisfaction of his demands, together with the fees of the referee. »
The money on deposit with the trust company had been placed there under an order of the surrogate made on the 24th of May,' 1866, by which the executors, Edward McClellan and George F. Gilman, were directed to “deposit in the Union Trust Company to the credit of themselves, as executors of Nathaniel Gilman, deceased, and for the security of the individual shares or interests of the said petitioner, all the United States bonds and interest bearing notes, together with their coupons, belonging to the estate of Nathaniel Gilman, deceased, now in their possession and under their control, or in the possession or control of either of them, said bonds, or notes, to remain in the possession of said trust company until the further order of this court.”
This order was not before, or in the mind of, the surrogate at the time when he directed, as he did, by an order on the 26th of June, 1885, the payment to be made to the attorney. After this payment had been made, Charles H. Gilman, as an executor and legatee, and Caroline G. Garczynski, who is a surviving child of Elizabeth Redington, a *323 daughter of the testator, and entitled to one-twentieth of the estate, commenced proceedings for an application to the surrogate to vacate the order by which the payment of the money had been directed and under which it was made. They were not parties to the proceeding which resulted in that order, and claimed in support of tneir application that Anna K. Gilman had already received more than she was entitled to out of her father’s estate, and that the surrogate, therefore, should in no view direct the payment of this money upon an indebtedness by her to her attorney. And it was further insisted under the language of the order of 1866, that the fund and securities deposited with the Trust Company could not legally be appropriated to such payment.
The amount of the deposit under the order of 1866 was $201,500, but it had been greatly reduced from time to time by applications made and allowed in favor of different persons by the predecessors in office of the present surrogate. And that was specially relied upon in support of a motion for reargument after a decision had been reached by the • surrogate, that the order directing this payment was an improper one. But the fact that other orders had been which should not have been made, formed no jurisdiction for the order then in controversy if that itself was an improper one. It has also been urged in support of the appeal that the decision made by this court affirming the order of 1866 sustains the proceedings of the surrogate in directing the payment, but neither the decision then made, nor the opinion preceding it, sanctions any of these payments. It was considered that the surrogate, under the order of 1866, had the power to control the fund in the possession of the trust company, as justice might require that to be done, but not that it was judicious in any instance to make either of the payments which had been directed to be made, and were made by the trust company. On the contrary the inclination of this court has been at all times to discountenance the application made for the distribution of any parts of this estate pending its settlement, it having been considered that the misfortune to which it has been subjected in the way of litigation has been greatly aggravated by the allowances from time to time made and paid to the different applicants, whose applications were favorably acted upon by the surrogate’s court, presided over by the present surrogate’s predecessors. It is quite evident that, as a matter of prudence and good management, the payments should not have been directed, and if they had npt been, this unfortunate estate, which, for more than twenty years, has been involved in continuous litigation, would have long before this been settled up *324 and the property distributed among the persons entitled to receive it. It is a standing reproach to the courts that the estates of deceased persons maybe embroiled in litigation in this manner, and the individuals designed to be benefited by them prevented from enjoying the bounty of .the testator for the greater part, if not the entire period, of their natural lives. And instead of doing anything to promote that end, it should be discountenanced and avoided by every just legal expedient.
While, therefore, the surrogate’s court did have the authority to control this deposit, it could not do so to the prejudice of the interests of the persons entitled finally to participate in the distribution of the property. Neither should it, as a matter of discretion, exercise any control over the fund which, by any possibility, might result in injury or loss to the persons entitled to be benefitted under the will of the testator. This was probably the view which, in part, induced the surrogate to vacate the preceding order and require the money paid under it to be restored again to the trust company. It had been improvidently paid out, and that would not have been permitted if the circumstances affecting the right of Anna K. Gilman to this appropriation of it had been before the surrogate at the time. They were not, and as the application to vacate the order was made without any want of diligence on the part of the applicants, it was a judicious exercise of the authority of the surrogate to make the direction which he finally gave.
The power to make it was provided by subd. 6, of section 2481 of the Code of Civil Procedure. That vested in the surrogate all the authority over the orders of his court by way of opening, vacating, modifying, or setting them aside, which a court of general jurisdiction has been permitted to exercise. And a court having such jurisdiction it has been held, where it is not restrained by a positive enactment, has the power, “ to vacate, on motion, its process, order, or judgment, to prevent a perversion thereof, or to frustrate oppression.” Levy v. Loeb, 5 Abb. N. C., 157,166, affirmed 75 N. Y., 609; Dinsmore v. Adams, 49 How., 238; McLean v. Stewart, 14 Hun., 472.
The case of Story v. Dayton (22 Hun., 450), has no application to this proceeding, for the reason that it was decided under the law as it existed before this very enlarged authority was provided for the surrogate’s court. The case of Tilden, (98 N. Y., 434), in no manner affected the decision made by the surrogate, for this application was made with diligence, and brought before him for adjudication before any such lapse of time intervened as would pre - vent its favorable consideration. And it was also warranted *325 by the very broad language of section 724 of the Code of Civil Procedure, providing for the correction of mistakes in legal proceedings.
The appellant, Anna K. Gilman is justly chargeable with responsibility for the money paid by the Trust Company. It was paid as the result of her own application, and in consequence of which she received the papers from the attorney, and the stipulations for substitution, which it was her object to secure. After instituting these proceedings and obtaining their advantages in this manner, she cannot be at liberty to deny her responsibility for the repayment of the money received by the attorney on her account. It was to pay her indebtedness, and secure these advantages to her, that the direction of the surrogate was given. The order was accordingly right in requiring her to repay the money to the Trust Company, and so it was as to the attorney himself who in fact received and appropriated the money. And as the executor, George F. Gilman, neither obtained, received, or used the money, he in no way became liable for its return to the Trust Company.
But before the attorney could justly be required to refund the money, the order should have provided for the return of the papers to him, upon which he claimed a lien for his services. The final order had the effect of rescinding that under which the payment had taken place, and it could not legally be. rescinded without placing the parties in the relative positions occupied by them, previous to the time of the payment of the money. The primary obligation indicated by the facts was upon Anna K. Gilman. It was her indebtedness which was to be provided for and paid, and in accordance with that fact, the order should be modified by inserting some further directions. These directions should require her within twenty days after service of a copy of the order, to repay this amount of money with the interest which would have been allowed by the Trust Company, to that company, or in default of such payment to return the papers received by her from her attorney, with proper stipulations to vacate the orders of substitution; and then requiring the attorney within twenty days after the return of such papers, to pay to the Trust Company this sum of money, together with the same rate of interest, less the amount paid to the referee, which should be absolutely required to be paid within twenty days by Miss Gilman, and as so modified the order should be affirmed, with costs against the appellant, Anna K. Gilman.
Van Brunt, P. J., and Brady, J., concur